[Civ. No. 2556.   Second Appellate District, Division One.—April 7, 1920.]

## DON LEE, Appellant, v. J. DE LA MOTTE et al., Respondents.

[1] OPTION — REPURCHASE OF AUTOMOBILE — TIME OF EXERCISE.— Where in connection with the purchase of an automobile the purchaser turns over to the dealer an automobile which he then owns, which it is agreed is to be held by the dealer for thirty days at a price to net the purchaser a given amount, and if not sold in thirty days the purchaser has the option to buy it back for a specified amount plus repairs put on it, the purchaser cannot be called upon to exercise his option to repurchase the machine immediately upon the expiration of the thirty days, but must be deemed to have been allowed a reasonable time thereafter within which to exercise that option; and the exercise of such option forty-five days after the option period had commenced to run was within a reasonable time where at that time the repairs on the car were not fully completed.

[2] CLAIM AND DELIVERY—CONDITIONAL SALE OF AUTOMOBILE—OWNERSHIP—RIGHT OF POSSESSION—FINDINGS.—In this action in claim and delivery to recover possession of an automobile sold by plain-

tiff to defendant under a contract of conditional sale, wherein the title to the car was expressly reserved in plaintiff until the automobile was completely paid for, while a finding that defendant was entitled to possession of the automobile was authorized, a finding that plaintiff was not the owner of the automobile was unsupported by the evidence.

[3] ID.—CLAIM OF RETURN OF PROPERTY—INSUFFICIENCY OF ANSWER. Where the answer, in an action in claim and delivery in which the property has been delivered to the plaintiff, does not claim a return of the property, such answer is insufficient to support a judgment for its return.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Reversed.

The facts are stated in the opinion of the court.

W. R. Law for Appellant.

Henning & McGee and J. De La Motte, *in pro. per.,* for Respondents.

JAMES, J.—Action in claim and delivery for the recovery of possession of a certain automobile or its value, which latter was alleged in the complaint to be the sum of $850, together with damages. Defendants had judgment, from which plaintiff has appealed.

In addition to determining that the plaintiff was neither the owner nor entitled to the possession of the automobile in question, the trial court found that the plaintiff had preliminarily obtained the possession of the automobile through the sheriff, and by the judgment directed that the defendants have possession of the same, or recover the value thereof, which was fixed at the same sum alleged by the plaintiff, to wit, $850. The appellant's points may be summarized under two heads: (1) That the evidence was insufficient to support the finding against the ownership or right to the possession of the automobile in the plaintiff; (2) that under the pleadings the judgment directing the return of the automobile to the defendants was unauthorized. A consideration of the first point involves an examination of the main facts of the case as shown by the evidence. Necessarily, in considering the findings as made by the trial court, the evidence introduced on behalf of the plaintiff

must be considered in its strongest light. As defendant De La Motte appears to have been the actual contracting party in the transaction about to be described, we will hereinafter refer to him as the defendant. Defendant Millais, it seems, had possession of the automobile at the time this controversy arose, but her possession was derived from De La Motte and no question is made but that De La Motte was the party responsible to the plaintiff.

On the seventeenth day of November, 1916, plaintiff made a contract of conditional sale whereby he agreed to sell to the defendant a used automobile for the sum of $850. The contract of sale, signed by both parties, acknowledged the receipt of $450 on account, and provided that payments should be subsequently made, to wit: seventy-five dollars on December 17, 1916, and sixty-five dollars on the seventeenth day of each of the five months immediately following. It was provided that interest at the rate of eight per cent per annum should be paid by the vendee. In conjunction with this contract, promissory notes covering the deferred payments and corresponding to the terms of the contract as to amounts and due dates were made. As a matter of fact, the initial payment of $450, which the contract acknowledged, was not a cash payment, but was a credit which the plaintiff agreed to allow in consideration of the delivery to him by defendant of another used automobile. In other words, the transaction took the form of a partial exchange of automobiles. As a part of the transaction, however, an additional agreement was made, evidenced by the following written term: "Studebaker car [that being the car delivered by the defendant to the plaintiff], to be held for 30 days at a price to net purchaser $650, if not sold in 30 days purchaser has option to buy Studebaker for $500 plus repairs put on it." The automobile received from the defendant was not sold within the thirty days by the plaintiff, but was sold on the sixth day of January, 1917, for the sum of $750. Prior to this time, and while the machine was in the hands of the plaintiff, extensive repairs had been made upon it. The installment which fell due on December 17th of seventy-five dollars, by the terms of the contract as hereinbefore stated, was paid by the defendant. The installment due on January 17, 1917, which, as will be noted, was ten days after the automobile delivered by the defendant to the plain-

tiff had been sold, was not promptly paid; that is, on January 25, 1917, defendant forwarded to the bank which was making collection of the notes a check for sixty-five dollars, but did not include the small amount of interest due, claiming that he had been overcharged on the interest account. On the same date he wrote to the plaintiff as follows: "I have been waiting for you to make a settlement of my account on the sale of the Studebaker car which you sold for the sum of $750. I have to-day sent to the bank a check for the sum of sixty-five dollars and a request that they correct their account with me on account of an overcharge on the interest on all of the notes they have collected, which I have no doubt they will do. I will turn over the car to you if you wish, upon your turning over to me the Studebaker car, or upon the payment to me of the amount of money paid for the same. I think that it is usual under circumstances like that which now exists between us, to at least notify me of the fact that the car was sold and what was paid for the same, so that I would know what was coming to you on that account. I desire a complete statement of the account before the next payment is made." On January 26th the check was returned to the defendant by the bank with the suggestion that the matter of any offsets be taken up with the plaintiff directly. About the 1st of February defendant appeared at the place of business of the plaintiff and found that the car which he had delivered in part payment was still in the shops of plaintiff, and that the repair charges in full, as stated to him by the plaintiff, amounted to $204; he testified that the manager of plaintiff asked him whether he desired to exercise his option to purchase the car, and that he (defendant) stated that he would so exercise the option, but that on the following morning the same manager told him that the car had been sold and that he could not have it. The defendant demanded that a credit of $650 be given him on his account, instead of $450, which credit, if it had been made, would have more than satisfied the installment notes both for the January and February payments. Under the terms of the contract the defendant had no option to repurchase the Studebaker car until the 17th of December, 1916, or thirty days after the contract was entered into; the plaintiff, within the first thirty days, was required, if he sold the machine, to sell it for a price that

would produce for the defendant a credit of not less than $650. [1] Defendant could not have been called upon to exercise his option to repurchase the machine immediately upon the expiration of the thirty days, but must be deemed to have been allowed a reasonable time thereafter within which to exercise that option: Furthermore, certain repairs had been undertaken to be made by the plaintiff on the machine and these repairs were not completed at the end of the thirty days, and in fact were not completed at the time the defendant had his further dealings with the manager of the plaintiff in February, when, for the first time, the cost of the repairs was calculated and stated to him. This latter date was approximately forty-five days after the option period had commenced to run. In view of the fact that the repairs had not been completed and no statement of the same made to the defendant, we think it just to hold that a reasonable time had not elapsed subsequent to the expiration of the first thirty days at the early date in February to which we have referred. That being true, and as it appears that the defendant manifested his desire to repurchase at that time, and the fact being that the machine had been sold on the sixth day of January by the plaintiff, we think that defendant was entitled to have credited the amount received from the sale of the automobile, less the repair costs as they were stated to him, and less fifty dollars, that being the difference between the $450 mentioned as a credit in the contract and the amount for which the defendant was to be permitted to repurchase. If there was no other point to be considered in the case we might easily determine that these implied findings were made by the court. [2] The finding that the plaintiff was not the owner of the automobile, possession of which was sued for herein, finds no support in the evidence, although the more material finding that the plaintiff was not entitled to possession of the same is, for reasons already appearing, sufficiently sustained. As to the ownership being in the plaintiff contrary to the finding, the written contract particularly and expressly reserved title in the plaintiff until the automobile purchased by the defendant from him was completely paid for. Under any view of the evidence, it does not appear that the purchase price had been satisfied at the time this action was brought. However, upon a retrial, which it seems is necessary to be had,

different findings may be arrived at. **[3]** Defendant did not, in his answer, claim the right to have the automobile, taken under claim and delivery process, returned to him. Section 667 of the Code of Civil Procedure, relating to judgments in this kind of action, declares: "If the property has been delivered to the plaintiff, and the defendant *claim* a return thereof, judgment for the defendant may be for a return of the property or the value thereof, in case a return cannot be had, and damages for taking and withholding the same." Defendant did, by way of counterclaim, show the fact that the automobile had been taken from his possession by the sheriff at the instance of the plaintiff, and alleged certain damages which he had sustained by reason of such act. In his prayer for judgment he made no demand whatsoever for the redelivery of the automobile, his answer, after enumerating damages, concluding with the following words: "for which sum, together with the costs and disbursements of this action, defendant asks judgment; and that the plaintiff take nothing by his action, and that plaintiff's action be dismissed with costs." Under the authorities, this answer is insufficient to support a judgment for the return of the property. (*Pico* v. *Pico,* 56 Cal. 453; *Banning* v. *Marleau,* 101 Cal. 238, [35 Pac. 772].) In *Pico* v. *Pico, supra,* the court points out that ordinarily in an action of replevin where the issue is made as to the right of the plaintiff to the possession of the property and the facts showed that the defendant was entitled to that possession, a judgment for the return of the property to the defendant was permissible. However, attention is called to the fact that the code section above cited requires something more: "Nevertheless, a defendant cannot have judgment for a return of the property or its value, unless he has claimed a return in his answer. But this, even if it be held to require a formal demand, is not because such demand is necessary to eke out the denials, or constitutes of itself an affirmative allegation, but because it is arbitrarily made the duty of defendant to assert his formal claim for a return as a prerequisite to a judgment for the return of the property or its value. Except for this arbitrary requirement of the statute, the formal claim for a return of the property would not be necessary. We have seen that where the facts set forth in a plea of replevin showed that defendant was entitled to the possession of the

property when the action was commenced, a formal claim or demand for a return was not essential.  In reference to replevin, courts and legal writers have said that a defendant was entitled to a judgment for a return whenever the question, whether a return should be had, was presented by the pleadings; that is, whenever the right of plaintiff was contested, and the right of possession in defendant, or a third person, asserted.  Under our system, the general denial contests the right of plaintiff, and under it may be shown the right of defendant or a third person.  The denial of plaintiff's right to the possession necessarily includes an assertion of right in defendant, from whom the possession of the property has been taken under the writ; and would authorize a judgment for the return, *were it not for the provision of the code which requires a return to be claimed in the answer.*"  We are not permitted to assume, under the record as it is presented, that the plaintiff tacitly agreed that a judgment for the defendant for the return of the property would be made.  The evidence introduced was pertinent to a claim for damages, which is all that defendant seems to have sought by his answer.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.